MURPHY vs. THE CHICAGO & NORTHWESTERN RAILWAY COMPANY.

RAILROADS.  CONTRIBUTORY NEGLIGENCE *of owner of building near railroad, destroyed by fire from locomotive.*

1. In an action for injuries by fire to property adjoining a railroad, from negligence of the company in respect to the character or management of its locomotives, a want of ordinary care on plaintiff's part in the construction, management and use of the property, contributing directly to the accident, is a defense; and where there is evidence tending to sustain such a defense, the question of contributory negligence should be submitted to the jury.  So *held* where the contributory negligence charged consisted in permitting an accumulation of hay and shavings between the two buildings destroyed, and under one of them, which was set upon blocks two and a half feet high, and with the side next the railroad left open below the sills.

   [ORTON, J., concurs in the judgment on the ground that the facts tending to prove contributory negligence on plaintiff's part in the *use* of his buildings should have been submitted to the jury; but he regards the question of the effect of contributory negligence in the *location or manner of construction* of buildings adjoining railways as not in the case, and declines to express any opinion on that question.]

2. *Ward v. Railway Co.*, 29 Wis., 144, and other cases in this court, as to contributory negligence in cases of negligent injury to property by railroads, approved; *Erd v. Railway Co.*, 41 Wis., 65, distinguished from this case; and the points really decided in *Kellogg v. Railway Co.*, 26 Wis., 223, distinguished from certain apparent *dicta* therein.

APPEAL from the Circuit Court for *Jefferson* County.

A statement of the case was made in the opinion of Mr. Justice TAYLOR, substantially as follows:

This action was brought to recover of defendant the value of a small shop or warehouse and a large barn and contents alleged to have been burned by defendant's negligence. The evidence shows that the plaintiff built his warehouse and barn on the east side of Brook street, in the city of Fond du Lac, and within twelve feet of the line of the main track of defendant's railroad, which, at the place where the said buildings were situated, and for some distance both north and south of them, runs along said street. The evidence further shows that at the time said buildings were burned, and for some time previous thereto, the large barn had been used by the plaintiff for receiving and pressing hay therein, and for storing the same; that the shop or warehouse was used for storing property, and sometimes as a carpenter shop; and that it was set upon blocks two and a half feet high, and the side next the railroad was open below the sills. There was evidence also tending to show that straw, hay and shavings had accumulated under said small building; and in the space between the small building and the large barn, loose hay had accumulated. There was also evidence tending to show that plaintiff had been warned that his premises were in a dangerous condition, and that he ought to use greater caution in .protecting the same against fire. The evidence also showed that the fire commenced either in or under the small building, and communicated from that to the large barn; and that at the time of the fire there was a high wind blowing from the west, and the weather was dry, and had been so for some time.

The evidence on plaintiff's part showed, that just before the fire a freight train passed the buildings going south, and that the engine attached to the train was scattering a large amount of coals and cinders as it passed along the street just before reaching the buildings, and the small building was seen to be on fire a few minutes after the train had passed. It also tended very strongly to show that the engine used was not properly constructed to prevent the escape of coals and cinders.

The defendant took a great number of exceptions on the trial, and argued several in this court. Among the exceptions

so argued was one taken to the refusal of the circuit judge to submit to the jury the question of contributory negligence on the part of the respondent, predicated upon the evidence that he allowed hay, straw and shavings to accumulate under the small building; that he allowed the space between the sills of said building next the railroad to remain open; and that he allowed the hay, in unloading it from the wagons into the barn, to scatter upon the ground near the line of the track, and to remain and accumulate there.   Having refused to give the instructions asked by the defendant upon this question, the learned circuit judge charged the jury as follows: "This obligation of care, the want of which constitutes negligence according to the circumstances, is imposed upon the party who uses the fire, and not upon the person whose property is exposed to damage by reason of the negligence of such party." And again: "While, as I have said, the defendants in this action had the right to use their way in the transaction of their legitimate business, while they had the right to use fire there, *the plaintiff on his part had a right to use his own land adjoining the track of the defendant as he saw fit;* and if, through the negligence of the defendant, the property of the plaintiff took fire, the defendant is liable to the plaintiff for the damages sustained."   These instructions were duly excepted to by the defendant.

Verdict and judgment for the plaintiff, for the value of the building and contents; and defendant appealed.

*C. A. Eldredge* and *William Ruger*, for the appellant,[1] discussed the true meaning of the decision in *Kellogg v. C. & N. W. Railway Co.*, 26 Wis., 233; and to the point that plaintiff was bound to exercise ordinary care in the use of his premises, and that such ordinary care must be determined by reference to the danger to which the premises were necessarily exposed by their proximity to the railroad, they cited *Ross v. Railroad Co.*, 6 Allen, 87; *Coates v. Railway Co.*, 61 Mo., 38, 44; *Brown v. Railroad Co.*, 37 id., 298; *Fero v. Rail-*

---

[1] *Mr. Eldredge* and *Mr. Ruger* filed separate briefs, but the reporter has been furnished only with that of *Mr. Ruger*.

*road Co.*, 22 N. Y., 209; *Kans. P. Railway Co. v. Brady,* 17 Kans., 380; *Kesee v. Railroad Co.*, 30 Iowa, 78, 82–5; *G. W. Railway Co. v. Haworth*, 39 Ill., 346; *O. & M. Railroad Co. v. Shanefelt*, 47 id., 497; *I. C. Railroad Co. v. Frazier*, id., 505; *I. C. Railroad Co. v. Nunn*, 51 id., 78; *C. & N. W. Railway Co. v. Simonson*, 54 id., 504; *T., W. & W. Railway Co. v. Maxfield*, 72 id., 95; *Stucke v. Railroad Co.*, 9 Wis., 218; *Hassa v. Junger*, 15 id., 600; *Pitzner v. Shinnick,* 39 id., 129; *Jones v. Railway Co.*, 42 id., 306; *Lawrence v. Railway Co.*, id., 322; *Curry v. Railway Co.*, 43 id., 665; *Martin v. Railroad Co.*, 23 id., 441; *Spaulding v. Railway Co.*, 30 id., 125; *Ward v. Railway Co.*, 29 id., 144; *McNarra v. Railway Co.*, 41 id., 69; *McHugh v. Railway Co.*, id., 75; *Caswell v. Railway Co.*, 42 id., 193.

*E. S. Bragg*, for the respondent, upon the question of contributory negligence, cited *Kellogg v. C. & N. W. Railway Co.*, 26 Wis., 244; *Spaulding v. C. & N. W. Railway Co.*, 30 id., 111; *Read v. Morse*, 34 id., 318; *Higgins v. Dewey*, 107 Mass., 499; *Webb v. R., W. & O. R. R. Co.*, 49 N. Y., 420.

TAYLOR, J.  The refusal of the learned circuit judge to give the instructions asked upon the question of plaintiff's contributory negligence, and the instructions given by him to the effect that the jury were not to consider that question upon the facts presented by the evidence, were based, it is said, upon the decisions of this court in the cases of *Kellogg v. Railway Co.*, 26 Wis., 223, and *Erd v. Railway Co.*, 41 id., 65; he holding that these decisions had established the rule in this state, that the owner of property adjoining the line of a railroad might, in the language of the learned judge, "·use the same as he saw fit," and yet recover against the railroad company, if, by the negligence of such company, the same was set on fire and burned, and that in such case the general if not the universal rule, that, in an action to recover damages resulting from the negligence of the defendant, if the negligence of the plaintiff contributed directly or as an approximate cause to the occur-

rence from which the injury arises, the plaintiff cannot recover, does not and cannot apply.

We think the learned circuit judge has extended the principle of the decisions above referred to, much farther than the facts upon which the same were based will authorize.

It is a well settled rule in applying the decisions of the courts of last resort, that the decision must be limited to the facts of the particular case in which the decision is made, and if a general rule or principle is to be founded upon such decision, such general rule will be controlled and limited by such facts. To understand the scope of the decisions of this court in the cases of *Kellogg v. Railway Co.* and *Erd v. Railway Co.*, it becomes necessary to see what the facts were, and what questions were decided.

The only points necessarily decided in the case of *Kellogg v. Railway Co.* were: 1st. Whether the presence of dry grass and other inflammable materials on the line of the railroad, and which were suffered to remain there without care, was a fact from which a jury might find negligence against the railroad company; and 2d. Whether, because the plaintiff had permitted the weeds, grass and stubble to remain on his land immediately adjoining the railway of the defendant, he could be charged with contributory negligence so as to defeat his action for damages occasioned to his property from the spread of a fire kindled upon the right of way of the defendant, and spreading from thence to his land, and destroying his property. On the trial of that action in the circuit court, the circuit judge submitted the question to the jury, whether the fact that the plaintiff permitted such weeds, grass and stubble to remain on his land adjoining the railroad of the defendant was negligence on his part; and the jury found it was not. The defendant asked the learned circuit judge to charge the jury that it was negligence, as a matter of law, for the plaintiff to suffer such weeds, grass and stubble to remain on his land adjoining the railroad. This the judge refused to do, and the exception was to the refusal of the court to so charge the jury. This court held that such refusal to charge the jury was

not error; and the late learned Chief Justice DIXON, in his opinion, argues the point with great ability, and not only insists that these acts of omission on the part of the plaintiff were not such acts that negligence *per se*, and as a matter of law, could be predicated thereon, but he goes much farther, and insists that they were not acts which tend to prove negligence on his part. Although what was said upon this subject beyond what was required to decide the exceptions taken by the defendant, is not, perhaps, binding upon this court, and need not necessarily be held as *res adjudicata;* yet, as controlled by the facts in that case, we are not now disposed to question its correctness. There are, however, some things said by the learned chief justice *arguendo*, to which, if they are to receive the construction apparently given to them by the learned circuit judge before whom the action at bar was tried, we cannot assent. If that case be construed to have decided that in every case a person owning lands adjoining the track of a railroad may use the same as he sees fit, so long as he does not use it unlawfully — in the sense of using it in such a manner as to subject himself to a criminal action, — and still not subject himself to the charge of negligence in such use when seeking to recover of the railroad company for an injury to his property by reason of a negligent act on the part of such company, we dissent from that construction; and we do not feel bound to hold that this court has so decided, even though it may be fairly inferred that such was the opinion of the learned chief justice who wrote the decision in that case.

With very much of the argument of the learned chief justice referred to, we fully concur. On page 230 he says: "The evidence tends very clearly to establish these facts, and under the instructions the jury must have so found. The plaintiff is a farmer, and, in the particulars here in controversy, conducted his farming operations *the same as other farmers throughout the country. It is not the custom anywhere for farmers to remove the grass or weeds from their waste lands,* or to plough in or remove their stubble, in order to prevent the spread of fire originating from such causes. Upon this question, as upon

the others, the court charged the jury that it was for them to say whether the plaintiff was guilty of negligence, and, if they found he was, that then he could not recover. . . . The charge upon this point, as well as upon the other, was quite as favorable to the defendant as the law will permit, and even more so than some of the authorities will justify." The learned chief justice then proceeds to say that some of the authorities hold that the owner of lands adjoining a railroad is chargeable with negligence if he does not remove the dry grass and combustible material from his own land, and that he cannot recover damages when the loss by fire is communicated by means of such combustible matter on the plaintiff's land; but he refuses to follow those decisions, and follows those holding a different doctrine, quoting as the cases relied on in his opinion, *Cook v. Champlain Transportation Co.*, 1 Denio, 91; *Vaughan v. Taff Vale Railway Co.*, 3 Hurl. & Nor., 743, and 5 id., 679. Of these cases the chief justice says: "The reasoning of those cases is, in my judgment, unanswerable. I do not see that I can add anything to it. They show that the doctrine of contributory negligence is wholly inapplicable — that no man is to be charged with negligence because he uses his own property or conducts his own affairs as other people do theirs, or because he does not change or abandon such use, and modify the management of his affairs, so as to accommodate himself to the negligent habits or gross misconduct of others, and in order that such others may escape the consequences of their own wrong, and continue in the practice of such negligence or misconduct. In other words, they show that no man is *to be deprived of the free, ordinary and proper use of his own property* by reason of the negligent use which his neighbor may make of his." The argument of the chief justice above quoted, properly understood, is approved by the present members of this court; and it is probable that no misunderstanding of the scope of the decision in that case would have occurred, had not the chief justice, in further illustration of his views, permitted himself to indulge in some general remarks, which were wholly outside the case,

and which we are not inclined to follow to what is supposed to be their logical conclusion. Further along in the opinion, on p. 233, in speaking of 'the obligation of the railroad company to keep the dangerous element of fire so under control that it shall not escape and damage the adjoining owner, he says: "This obligation of care, the want of which constitutes negligence according to the circumstances, is imposed upon the party who uses the fire, and not upon those persons whose property is exposed to danger by reason of the negligence of such party. Third persons are merely passive, and have the right to remain so, *using and enjoying their own property as they will, so far as responsibility for the negligence of the party setting the unruly and destructive agent in motion is concerned.* If he is negligent, and damage ensues, it is his fault and cannot be theirs, unless they contribute to it by some unlawful or improper act. But the use of their own property as best suits their own convenience and purposes, or as other people use theirs, is not unlawful or improper. It is perfectly lawful and proper, and no blame can attach to them."

If the language of the learned chief justice last above quoted is to be construed, as it seems to have been by the circuit judge who tried the case at bar in the court below, that the owner of lands adjoining a railroad track may do as he sees fit upon such land, without being subject to the charge of want of care, or negligence, no matter how reckless such use or negligence may be, in an action to recover against the railroad company for negligently setting fire to the property of such owner, then we cannot approve of the language used by the chief justice, and we do not think that any such doctrine is established by the cases cited by him to sustain it.

In the case of *Cook v. Transportation Company*, above referred to, it was insisted that the plaintiff could not recover for the burning of his planing mill, which stood near a steamboat landing, and was set on fire by the carelessness of the persons managing the boat, on the ground that the plaintiff was guilty of negligence in locating his mill at that point. There was

no evidence that he was guilty of any carelessness in the management of his mill or business, and the complaint alleged that the main building was covered with slate and boiler iron. BEARDSLEY, Justice, in his opinion, says: " A land-owner builds immediately on the line of a railroad, as he has an unquestionable right to do; it may be an act of great imprudence, but in no sense is it illegal. Is he remediless if his house is set on fire by the sheer negligence of an engineer in conducting his engine over the railway? There must be some wrongful act or culpable negligence on the part of the plaintiff to bar him on this principle; and neither can be affirmed *of any one for simply occupying a position of more or less exposure on his own premises.*" And in another place he says: " We must at last, I think, come to the conclusion, that while a person confines himself to a lawful employment on his own premises, *his position, however injudicious and imprudent it may be, is not therefore wrongful; and that his want of due care or judgment in its selection can never amount to negligence, so as thereby to deprive him of redress for wrongs done to him by others.*" It will be seen that all the court decided in this case was, that contributory negligence could not be predicated upon the mere fact that the plaintiff placed his buildings near to the steamboat landing, where they would be more exposed to danger than in some other place. The court did not pass upon the question whether a careless and reckless use of such building in carrying on his business, thereby unnecessarily increasing the danger from fire, would or would not amount to such negligence. *Rowell v. Railroad,* 57 N. H., 132, was decided under a statute similar to the statute in Massachusetts, and the court held that the statute made the railroad company liable absolutely for the destruction by fire of adjoining buildings, communicated by the use of engines on the line of its road, and that the doctrine of contributory negligence did not apply. In the case of *Fero v. R. R. Co.,* 22 N. Y., 214, the plaintiff was building an addition to a hotel, which stood within thirty feet of the railroad track, and which was burned on a dry, windy day by coals and cinders

driven through a partly opened door into the shavings in the building in course of construction. BACON, Justice, who delivered the opinion of the court, says: "The fact, as disclosed by the evidence, appeared to be, that the fire was communicated by sparks or coals driven from the engine into the building of the plaintiff through a partly open door; and it was insisted by the defendants, and the judge was asked to charge, that if the fire was thus communicated, the leaving open the door was an act of carelessness, which would preclude a recovery. This instruction the judge declined to give, but did charge that the plaintiff was bound to use such care in protecting his premises as a man of ordinary prudence would have employed under the circumstances, and if, through his neglect or that of his employees, his house was consumed, or if such neglect on his part concurred with negligence on the part of the defendants in producing the result, the plaintiff could not recover. Whether leaving open the door constituted such negligence, was left as a question of fact to be determined by the jury. This portion of the charge is, in my judgment, wholly unexceptionable. It presented the legal principle which prevails in such cases, clearly to the jury, and in a manner entirely favorable to the defendant, and left, as it should, the question of fact to them upon the evidence."

*Ingersoll v. Railroad Co.*, 8 Allen, 438, was an action to recover the value of a barn alleged to have been set on fire by an engine of the defendant company. The court say: "There is nothing to show that any fault of the plaintiff contributed to the loss, if the buildings were lawfully placed where they stood. The fact that a building or other property stands near a railroad or partly or wholly on it, if placed there with the consent of the company, does not diminish their responsibility, in case it is injured by fire communicated from their locomotives." In Massachusetts, as in most of the New England states, railroad companies are made liable by statute to pay for all buildings burned on the line of their road, where the fire originates from the use of their engines, whether occurring from negligence or purely accidental. But it is held that the

same rule applies to the plaintiff, and that if his negligence contributed to the loss, he cannot recover. See *Ross v. Railroad Co.*, 6 Allen, 87, cited below.

The case of *Vaughan v. Railway Co.*, 3 Hurl. & Nor., 743, was an action for burning the plaintiff's standing timber. The evidence showed that there were leaves and other combustible matter on the plaintiff's woodland adjoining the defendant's railway. The defendant's counsel asked that the court should submit to the jury the question whether the plaintiff had not been guilty of negligence in permitting the wood to be in a combustible state by not properly clearing it. The presiding judge refused to submit the question, and said to the jury that he thought there was no duty on the part of the plaintiff to keep his wood in any particular state. On the argument of a motion for a new trial, BRAMWELL, Justice, said: "It remains to notice another point made by the defendants. It was said that the plaintiff's land was covered with very combustible vegetation, and that he contributed to his own loss, and Mr. Lloyd very ingeniously likened the case to that of an overloaded barge swamped by a steamer. We are of opinion this objection fails. The plaintiff *used his land in a natural and proper way, for the purposes for which it was fit. The defendants come to it, he being passive, and do it a mischief.*" The court approved of the refusal of the judge to instruct the jury as asked by the defendant.

A question similar to the questions considered in the cases above cited, came before the supreme court of New Jersey, and was decided in 1875: *Salmon v. Railroad Co.*, 38 N. J. L., 5. In this case it was held that a person owning land contiguous to a railroad is not obliged to keep the leaves falling from his trees from being carried by the wind to such railroad, nor to keep his lands clear of leaves and combustible matter; nor, on failure to perform such acts, does he become contributory to the production of a fire originating in the carelessness, on its own land, of the railroad company. Chief Justice BEASLEY, who wrote the opinion, says: "In the absence of special legislation, *a man does not become a wrongdoer by*

AUGUST TERM, 1878. 233

Murphy vs. The Chicago & Northwestern R'y Co.

*leaving his property in a state of nature.* If water falls upon the surface, he is not obliged to counteract the law of gravity in order to prevent such water from flowing on the adjacent land; or if the soil becomes disintegrated by the action of heat, he is under no duty to prevent the dust there arising from being carried through the air into the house of his neighbor." The learned chief justice then goes on to argue, that the plaintiff was under no legal obligation to prevent the leaves falling from his trees from being carried by the wind to the land of the defendant, and that "all land is subject to the servitude of receiving the leaves brought to it in the course of nature, and, as a compensation, can dispose of its own leaves in the same manner. The consequence is, there was no negligence in the plaintiff's allowing the leaves in question to be carried to the roadway of the defendant; and that being so, it follows, that, being on the land of the defendant rightfully, it became its duty to remove them when it desired to use fire on its land under dangerous conditions." The point of the defense in this case was, that the winds had blown the leaves from the plaintiff's woods on to the track of the defendant's road, and they were there set on fire by the passing engines, and the fire so kindled spread to the adjoining woodlands of the plaintiff, and destroyed the timber standing thereon. The court held, as above stated, that there was no contributory negligence on the part of the plaintiff.

The case of *Erd v. Railroad Co.*, 41 Wis., 65, was an action to recover the value of a fence burned by the negligence of the railroad company, and the only contributory negligence charged against the plaintiff was, that he permitted leaves, dry grass and brush to remain on his land adjoining the line of the railroad at the place where the fire originated; and this court held that such act of omission was not negligence.

It is clear that none of the cases above cited — and they are perhaps the strongest ones that can be found in any of the books, — if the decisions are limited to the exact points presented by the facts, establish the doctrine contended for by the plaintiff in this action, and none of them negative the propo-

sition that the owner of lands adjoining the track of a railroad may, by gross negligence in the manner of the construction of his buildings, or in the manner of conducting his business in and about the same, in the immediate vicinity of such rail-road track, be chargeable with contributory negligence which might prevent a recovery by him in an action to recover for the destruction of such buildings or other property by fire com-municated by the negligent act of the railroad company. It is not denied that the comments of the learned judges who delivered the opinions of the respective courts in the cases above cited, with the exception of the case of *Vaughan v. Railway Co.*, might be construed as sustaining the doctrine contended for in this case; but as authoritative decisions they do not go that length, and we are not inclined to follow the reasoning of the learned judges to the conclusion contended for.

The rule that, in actions to recover damages caused by the negligence of the defendant, negligence on the part of the plaintiff which directly contributed to the occurrence which caused the damage, will defeat the plaintiff's action, is univer-sal, unless a different rule be prescribed by statute. This rule was stated by the present learned chief justice in the case of *Curry v. Railway Co.*, 43 Wis., 675: "This is the true view of an action for negligence, going upon the sole negligence of the defendant, without contributory negligence of the plaint-iff." "Actions for negligence impute the injury to the negli-gence of the defendant alone." In the case of *Murphy v. Deane*, 101 Mass., 464, Justice WELLS says: "Throughout the discussion the general doctrine is recognized, that negligence of the plaintiff, coöperating to produce the result, will defeat the action; that the negligence of the defendant must be the sole cause of the injury." The same rule is laid down in *Tuff v. Waxman*, 5 C. B. (N. S.), 573; and approved in *L., B. & S. C. Railway Co. v. Walton*, 14 Law Times (N. S.), 253. This rule is also illustrated in the case of *Walsh v. Porterfield*, decided by the supreme court of Pennsylvania, October 11, 1873, where, in an action against an innkeeper by a guest for

goods stolen from the guest's room, in which it was shown
that at the time of the theft the guest was intoxicated, it was
held that if his intoxication contributed in any way to the loss,
he could not recover. Alb. L. J., vol. 18, No. 19, p. 376
Substantially the same rule was held in the case of *Jalie v.
Cardinal*, 35 Wis., 118. The cases in this court do not con-
trovert this rule; and the only question to be determined is,
whether negligence can be imputed to the owner of lands or
buildings adjoining a railway track, on account of anything
done by him, either in the location or manner of constructing
such buildings, in the manner of maintaining them, the pur-
poses for which he uses them, or the manner of such use. The
learned circuit judge before whom this action was tried, in-
structed the jury that in relation to these matters no negli-
gence could be imputed to such owner; that, as to the railroad
company, such owner is under no obligation to exercise any
care in order to prevent an injury arising from the negligence
of such company; and that no matter how gross the negli-
gence of such owner in his business, or in the construction or
use of his buildings adjoining the track of the railway, and no
matter whether the exercise of the most ordinary care would
have prevented the injury sustained, it is no defense to his
action. We cannot sanction this broad doctrine, exempting
the owner from the exercise of ordinary care in the manage-
ment of his property. Such a rule is neither promotive of
public or private morals, and we think is not sanctioned by
the weight of authority. The necessities of civilized society
require very many limitations to the broad statement that a
man may do as he sees fit on his own lands with his own prop-
erty. The laws in very many cases restrict such right, and
punish the exercise of it. The municipal regulations of our
cities prevent the carrying on of dangerous trades or the keep-
ing of large quantities of dangerously explosive articles in the
densely inhabited parts thereof. They interfere with and
direct the manner in which buildings shall be constructed in
order to prevent fires. In most cities in this country, the
plaintiff would have been liable to fine and imprisonment for

erecting the buildings burned, and using them in the manner he did, in the business parts thereof, and his buildings and business would have been declared a nuisance and subject to be abated.

We do not think that where the careless and negligent acts of a plaintiff result in kindling a fire on his own lands, he will be exempt from the charge of having contributed to the loss occasioned by such fire, merely because such negligent acts were done upon his own lands.

We are inclined to think the true rule as to the care which a person owning lands adjoining a railway is required to take of his property, is well expressed in the charge of the learned judge in the case of *Fero v. Railroad Co., supra*, which charge was approved by the court of appeals of the state of New York: "That the plaintiff is bound to use such care in protecting his premises as a man of ordinary prudence would employ under the circumstances, and if, through his neglect or that of his employees, his house is consumed, or if such neglect on his part concurred with negligence on the part of the defendant in producing the result, the plaintiff cannot recover." This was substantially the charge of the court in the case of *Kellogg v. Railway Co., supra*, which was approved by this court. In *Ward v. Railway Co.,* 29 Wis., 144, which was an action for burning a warehouse and its contents adjoining the railroad track, the late Chief Justice Dixon, who also delivered the opinion in *Kellogg v. Railway Co.*, says: "In the present case, the situation of the plaintiff's warehouse, the materials and mode of its construction, the purposes for which it was used, its proximity to the railway track, and all circumstances enhancing the danger and risk of destruction from fire communicated by sparks from the locomotives which were constantly passing and repassing, may have been such as to have required great prudence and foresight on the part of the plaintiffs to prevent its taking fire from such cause; but still they were not required to exercise any greater prudence and foresight than persons of ordinary care, or men of business and heads of families, usually exhibit in

their own affairs, *or than such persons usually exhibit or would be expected to exhibit under the same or like circumstances. The latter was no doubt the true measure of the care which was required of the plaintiffs.*" The same idea was also conveyed in the opinion of the chief justice in the case of *Martin v. R. R. Co.*, 23 Wis., 437–442, as follows: "The burning happened at the warm season of the year, when it is customary for most people, and convenience and comfort require them, to keep the windows of their houses wholly or partially open. Suppose, in such case, that the plaintiff's windows had, according to the general custom, been open, and the sparks had entered in that way: would it have been such a careless or improper use of her house as would have defeated a recovery?" The case was put by the court upon the ground that the evidence did not disclose a use of the premises which was not attended with the ordinary care which men under like circumstances give to the same.

In *Cunningham v. Lyness*, 22 Wis., 245, the plaintiff was crowded from the dock into the water through the defendant's negligence in driving a team from a ferry boat on to the dock; and there was evidence tending to show negligence on her part in standing upon the edge of the dock. Justice COLE, who delivered the opinion, in commenting upon this part of the case, says: "It was claimed that she (the plaintiff) had taken an exposed position on the dock, and that thus, by occupying the position she did, she was guilty of negligence which essentially contributed to the injury. If this were so — and it is not impossible that a jury might have so found when considering all the evidence bearing upon that point,— then we suppose no recovery could be had. Of course, we express no opinion upon the weight of that evidence; all that we wish to be understood as saying is, that there was sufficient testimony in the case to submit the question to the jury, whether Mrs. Cunningham was guilty of negligence in occupying the position she did upon the dock, which contributed to the unfortunate result."

*Jones v. Railroad Co.*, 42 Wis., 306, was an action brought

to recover the value of a horse killed by the defendant on its track, and it was held evidence tending to prove contributory negligence on the part of the plaintiff, that he, knowing the horse to be breachy and accustomed to jump fences, turned him into a pasture adjoining the railroad track near where he was killed.    In *Lawrence v. Railway Co.*, 42 Wis., 322, which was an action to recover the value of an ox killed on the defendant's railroad, the present learned chief justice, in discussing the question of contributory negligence on the part of the plaintiff, says: "For, assuming the negligence of the respondent (defendant) in not restoring the fence within a reasonable time, which we are not quite prepared to hold in the circumstances disclosed, it would have been his own negligence, contributing directly to the injury, to leave his cattle at large for the day, without purpose and by mere inadvertence, after the object for which they had been turned out had been effected, within some seventy rods of an operated railroad, without fence or obstacle to keep them from it." These cases abundantly show that a person may be charged with contributory negligence in the lawful use, management and control of his own property on his own land, which will defeat his recovery in an action for the destruction of the same by the negligence of another.

This rule is fully sustained by the decisions in many of the courts in other states.  *Ross v. Railroad Co.*, 6 Allen, 87, was an action to recover the value of a building and its contents, which was burned by the sparks from a passing locomotive. The evidence tended to show that the fire was communicated by sparks from the engine falling upon a parcel of shavings in the shed of the plaintiff, the sparks passing through an open door toward the railroad, or upon the old and dry shingles of the roof of the shed, about ninety feet from the railroad; that the weather had been dry for some time previous, and the wind was blowing from the direction of the railroad.  The defendant's counsel asked the judge to charge the jury, "that if the season was dry, and the wind was from the railroad and strong, and the plaintiff knew those facts, and left a door of a shed

open toward the railroad, and shavings within the shed, or old and dry shingles on the roof, known to him to be such, and either of those things contributed to the fire, it is negligence on his part, which should preclude a recovery." The court refused to give this instruction, but instructed the jury as follows: "That the plaintiff was bound to exercise ordinary care and prudence in reference to his property thus situated near a railroad; and that if they should find any want of ordinary care and prudence in reference to his property, by leaving open the door of the shed toward the railroad, or in reference to having shavings in the shed, or by reason of having old and dry shingles on the roofs of his buildings, he knowing the season was dry and that the wind was from the railroad, if either of the things mentioned contributed to the communication of the fire, the plaintiff could not recover." The plaintiff had a verdict, and the case was reported to the whole court for determination; and in the opinion affirming the judgment, BIGELOW, Justice, in passing upon this point, says: " As the case stood before the jury, it was a proper one to be submitted to practical men, having all the facts before them, to determine whether due care had been exercised by the plaintiff." The following cases hold to the same rule: *Kesee v. Railroad Co.*, 30 Iowa, 78, 82–5; *Railway Co. v. Haworth*, 39 Ill., 346; *Railroad Co. v. Shanefelt*, 47 id., 497–502; *Railroad Co. v. Frazier*, id., 505; *Railroad Co. v. Nunn*, 51 id., 78; *Railway Co. v. Simonson*, 54 id., 504; *Railroad Co. v. Maxfield*, 72 id., 95–100; *Railway Co. v. Brady*, 17 Kansas, 380; *Coates v. Railway Co.*, 61 Mo., 38–44; *Brown v. Railroad Co.*, 37 id., 287–298; *Ewing v. Railroad Co.*, 72 Ill., 25; *Railroad Co. v. Todd*, 36 id., 413; *Bevier v. Delaware & Hudson Canal Co.*, 13 Hun, 254–259; *Birge v. Gardiner*, 19 Conn., 507. Many of the cases here cited hold the owners of lands and other property adjoining the line of a railroad to the use of a much greater degree of care than has been required by the decisions of this court, and than this court as now constituted is disposed to require; but they all hold to the doctrine that such owner may be charged with contributory

negligence in the lawful use of his own property on his own land.

In this state railroad companies are not liable for the destruction of property caused by the communication of fire from the engines used on their roads, unless such fire is communicated by reason of the negligence of the company, its employees or servants. And in that respect their liability differs from companies doing business in Massachusetts and most of the other New England states, where by statute the companies are held responsible without regard to their negligence. The action in the case at bar is an action to recover on account of the negligence of the defendant, and comes, therefore, within the rule which limits the plaintiff's right to recover to a case in which the negligence of the defendant alone is the cause of the injury, and in which negligence of the plaintiff which directly or proximately contributes to the injury, defeats the action.

Whilst we do not intend in this case to overrule any case heretofore decided in this court, limiting the decisions to the actual facts of the case decided, we do intend to hold, and do hold, that the doctrine of contributory negligence on the part of the plaintiff is applicable to the case at bar, as well as to all other cases where a recovery is sought to be had on the ground of the negligent acts of the defendant; and we further hold that the negligent and careless acts of the plaintiff upon his own lands adjoining a railroad, although such acts may be in themselves lawful, may amount to contributory negligence, according to the circumstances.

Without deciding that the mere location of a barn, carpenter shop, planing mill or other manufacturing establishment which is, from its nature, easily set on fire, within a few feet of a railroad track, in a city where trains are made up and engines necessarily pass and repass more frequently than on the ordinary line, would in itself be negligence which might defeat an action for their destruction by fire originating from the negligence of the company, we are inclined to hold that, in such case, the manner of constructing such buildings in such place, including the materials of which they are constructed, and the

manner of their use after construction, are matters upon which negligence may be predicated; and that, if such buildings are not constructed of such materials and in such manner as a man of ordinary prudence would construct the same, under the circumstances, or if they are not used with the care with which a man of ordinary prudence would use them under like circumstances, and the want of such care, either in the construction or use of such buildings or management of such business, contributed directly to the communication of the fire which destroyed the same, then the owner cannot recover. In other words, if the jury to whom the facts are submitted, find that the fire would not have occurred if the plaintiff had used the care, in the construction, maintenance and use of his property, which a man of ordinary prudence would have used under like circumstances, then the plaintiff cannot recover; but if the jury find that the fire would have been communicated although the plaintiff had used such care, then he can recover, if the defendant was guilty of negligence, notwithstanding the negligence of the plaintiff. This is the rule which we think is well established by the authorities, and accords with justice and common sense. We see no reason why a man who recklessly and unnecessarily exposes his property to destruction by fire in the immediate vicinity of a railroad, which from the necessity of the case must use the dangerous element in carrying on its business, should as a general rule be protected, if by the use of ordinary care he could have avoided its destruction, any more than the man who recklessly and unnecessarily places his property upon the track, and it is thereby destroyed. We have no fault to find with the decisions of this court which hold that where an owner of lands adjoining a railroad uses them as men in like situation ordinarily use their lands, no negligence can be predicated upon such user. We agree with the case in New Jersey and the English cases cited, that the owners of woodlands adjoining railroads are not bound to gather up the falling leaves and other combustible material which may accumulate naturally thereon, nor to prevent the winds from carrying them upon the adjoining lands, and that

a neglect to do so is not negligence, because men of ordinary prudence ordinarily permit the same things upon their lands under like circumstances; but we are inclined to hold that, where a person places a building so constructed as to be easily ignited by fire, or other property of a highly combustible nature, in the immediate vicinity of a railroad, without any protection, and thereby increases the chances of its destruction, or where he carries on a business in the immediate vicinity of such road, which from its nature is extremely hazardous in such vicinity on account of its susceptibility to ignition and combustion from the sparks emitted from the passing engines, and such property is destroyed from fire communicated by such engines, in an action to recover for the value thereof on account of the negligence of the railroad company, it necessarily becomes a question whether such building was constructed in such a manner as a person of ordinary care and prudence would have constructed it under like circumstances; or, if it be combustible property, whether a man of ordinary prudence would have placed the same where it was placed by the plaintiff and with like protection against fire; and in the case of a business carried on, whether the business was conducted with that care with which a man of ordinary prudence would have conducted the same under the circumstances. In these cases the court cannot say, as a matter of law, that there was no contributory negligence on the part of the plaintiff, but the question should be submitted to the jury, under proper instructions. It was said by the present chief justice, in the case of *Curry v. Railway, supra*, speaking of the statute requiring railroads to fence the line of their roads: "The statute was not intended or framed to relieve adjoining owners from diligence in the care of their domestic animals, at the risk of danger to railroad trains, or to license negligence to establish cattle markets on railroads;" and we are of the opinion that the common law does not justify an adjoining owner in establishing a hay market, or a market for other highly combustible materials, in the immediate vicinity of a railroad, and there conduct such dangerous trade with a reckless want of care; nor does it author-

ize him so recover against the adjoining railroad company for a loss which his own recklessness invited, and which the use of ordinary care would have prevented. We think such conduct is "an improper act," within the meaning of that phrase as used by the late Chief Justice DIXON in *Kellogg v. Railway Co.*, 26 Wis., 234, and "culpable negligence on the part of the plaintiff," within the meaning of that phrase as used by Justice BEARDSLEY in *Cook v. Transportation Co.*, 1 Denio, 100.

The evidence in the case at bar was such that it became the duty of the court to submit the question of contributory negligence on the part of the plaintiff to the jury, and that his refusal to do so was error, for which the judgment must be reversed. There are other questions in the case which might with propriety be discussed; but as our time will not permit us to discuss every question raised and argued in this court, we content ourselves with the decision of the questions above discussed, as our opinion upon them necessitates the reversal of the judgment.

ORTON, J. I most fully concur in the decision of the court, and in the able opinion expressing such decision, upon the real and only question in the case, viz.: Ought the facts shown by the evidence tending to prove contributory negligence on the part of the plaintiff, to have been submitted to the jury?

On this question the reässertion of the doctrine of the case of *Curry v. The Chicago & Northwestern Railway Co.*, 43 Wis., 665, as expressed in the opinion of the chief justice, might have been sufficient, without elaboration.

The learned chief justice says, in relation to the kindred question of the absolute liability of this company by reason of their neglect to fence their track: "The essential danger of railroads required diligence on both sides; a higher degree of diligence in the management of the road, and at least ordinary diligence on the part of adjoining owners. The rule of absolute liability appears to be as unwise in policy as unsound in legal construction."

The numerous intimations of what would be contributory negligence on the ·part of owners of lands adjoining a railroad in other cases widely different from this, and the extended review of the great multiplicity of cases and opinions of other courts, in many respects not analogous to this case, and the general discussion of the doctrine of contributory negligence, in the opinion, though able and elaborate, may possibly work prejudice to future cases which should stand upon their own merits and be decided when they arise by impartial judgment, if these extraneous opinions are to be regardde as the decision of the court. In some of the opinions intimated, applicable only to other cases, I regret to say, I cannot concur.

I think the opinion, perhaps somewhat influenced and confused by the preceding review of other cases, goes quite too far in stating the questions presented by this case, when it says: "The only question to be determined is, whether negligence can be imputed to the owner of lands and buildings adjoining a railroad track, on account of anything done by him either in the *location or manner of constructing such buildings*, in the manner of maintaining them, the purpose for which he uses them, or the manner of such use. The learned circuit judge before whom this action was tried, instructed the jury that in relation *to these matters* no negligence could be imputed to such owner."

There was nothing in the instructions asked or given, relating to the question of the negligence of the plaintiff "*in the location of or manner of constructing such buildings.*" Neither the evidence nor the instructions had any reference to any negligence of the plaintiff on account of the *location* or *construction* of the buildings, but both were strictly confined to the careless and negligent *use* of the buildings.

Speaking of certain buildings constructed " within a few feet of a railroad track, in a city where trains are made up, and engines necessarily pass and repass more frequently than on the ordinary line," the opinion goes on to say: " In such case, *the manner of constructing such buildings in such place,*

*including the materials of which they are constructed*, and the manner of their use after construction, *are matters* upon which negligence may be predicated; and if such buildings *are not constructed of such materials and in such manner* as a man of ordinary prudence would construct the same under the circumstances, or if they are not used with the care with which a man of ordinary prudence would use them under like circumstances, and the want of such care, either *in the construction* or use of such buildings or management of such business, contributed directly to the communication of the fire which destroyed the same, then the owner cannot recover." Here, again, negligence in the *location* and *construction* of buildings, which is outside of the case, is mingled with negligence in the *use* of such buildings, which is the only negligence within the case; and in many other parts of the opinion great stress is laid upon careless and negligent *location* and *construction* of the buildings, and the *materials* and *combustible character* of the *materials* of their construction, not within this case.   Whether, and to what extent, the owner of lands adjoining a railroad in a city, or anywhere, can be chargeable with negligence in the location and construction of his buildings in the vicinity of the road, and which are destroyed by fire communicated by a passing locomotive through the gross carelessness of the railway company or its employees, are questions of very great importance; and no cases are cited in the opinion in which it has been held that such negligence in the *mere location* and *construction* of such buildings was contributory to the injury, and prevented a recovery.   How near the railroad track may an adjoining owner locate his buildings, and in what manner and with what materials may he construct them, so as *not* to be liable to the charge of contributory negligence in case they are burned by a passing railroad engine? If this class of negligence is open to speculation, it may become a very serious question to be determined in any given case, and it might possibly be decided, in a case where such a question would be directly involved, either that contributory negligence could not be predicated upon the *location or man-*

*ner of construction* of such buildings, or that such negligence should be shown to be *gross* and not *common* negligence.

It will be timely to decide such important questions when the case arises in which they are involved.

I most fully concur in the following passage of the opinion, not only as a proper criticism of the opinion in the case of *Kellogg v. Railway Co.*, but as the settled rule in all cases: "It is a well settled rule, in applying the decisions of the courts of last resort, that the decision must be limited to the facts of the particular case in which the decision is made, and if a general rule or principle is to be founded upon such decision, such general rule will be controlled and limited by such facts."

*By the Court.* — The judgment of the circuit court is reversed, and the cause remanded for a new trial.

RYAN, C. J., took no part.